IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALFONSO PERCY PEW,<br><br>Plaintiff,<br><br>v.<br><br>COL. E.A. JONES, *et al.*,<br><br>Defendants. | No. 3:15-CV-01611<br><br>(Chief Judge Brann) |

MEMORANDUM OPINION

MARCH 29, 2023

*Pro se* Plaintiff Alfonso Percy Pew ("Plaintiff"), who is presently incarcerated in the State Correctional Institution-Phoenix ("SCI-Phoenix"), complains that various officials violated his civil rights when he was formerly incarcerated in the State Correctional Institution-Camp Hill ("SCI-Camp Hill"). Following the dismissal of several claims and Defendants on December 15, 2021, I granted summary judgment as to all claims and Defendants other than Plaintiff's First Amendment retaliation and Eighth Amendment denial of food claims against Defendants Jones, Dempsey, Youch, and Brown, and announced my intention to decide whether Plaintiff exhausted administrative remedies as to the remaining claims. I subsequently conducted an evidentiary hearing on the exhaustion issue and ordered supplemental briefing.

Upon consideration of the evidentiary hearing and supplemental briefing, I conclude that Plaintiff failed to exhaust administrative remedies with respect to the remaining claims. I will dismiss the remaining claims on that basis.

## I. BACKGROUND

Plaintiff initiated this case through the filing of a complaint under 42 U.S.C. § 1983 on August 11, 2015, which the Court received and docketed on August 18, 2015.[1] In the original complaint, Plaintiff alleged that he was being denied meals, threatened, and otherwise retaliated against by prison officials to prevent him from reporting sexual harassment and abuse under the Prison Rape Elimination Act ("PREA").[2] The case was initially assigned to my late colleague United States District Judge Edwin M. Kosik and referred to United States Magistrate Judge Martin C. Carlson. By Order dated June 9, 2016, Judge Kosik addressed multiple

---

[1] *See* Doc. 1 at 5. Under the prisoner mailbox rule, the complaint is deemed filed on the date on which it was submitted to prison officials for mailing. *Pabon v. Mahanoy*, 654 F.3d 385, 391 n.8 (3d Cir. 2011) (citing *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998)). Here, the complaint does not contain a formal statement as to when it was submitted to prison officials for mailing, but Plaintiff signed the complaint on August 11, 2015, and "[d]istrict courts in the Third Circuit have applied the mailbox rule to use the date the prisoner signed the complaint as the date it was filed." *Cesspooch v. Williamson*, No. 3:07-CV-1790, 2008 WL 4974428, at *3 (M.D. Pa. June 20, 2008), *report and recommendation adopted*, No. 3:07-CV-1790, 2008 WL 4974427 (M.D. Pa. July 15, 2008). Accordingly, I deem the complaint filed on August 11, 2015, pursuant to the prisoner mailbox rule, notwithstanding the fact that my summary judgment opinion listed the date of the complaint's filing as August 18, 2015, the date on which the Court received and docketed the complaint.

[2] Doc. 1.

reports and recommendations by Magistrate Judge Carlson and dismissed several of Plaintiff's claims.[3]  Plaintiff was granted leave to amend.[4]

Plaintiff subsequently amended his complaint, moved for leave to add seven defendants to the case, and moved for leave to file a supplemental complaint.[5] Judge Kosik assumed inactive status on February 10, 2017, and the case was reassigned to me on February 21, 2017.

I reviewed Plaintiff's amended complaint and the associated motions on May 30, 2017.[6]  I concluded that the complaint did not comply with the pleading requirements of Federal Rule of Civil Procedure 8.[7]  I accordingly granted Plaintiff a final opportunity to file an amended complaint that complied with Rule 8, but cautioned that the complaint must be "limited to those defendants and claims which were originally raised and not previously dismissed."[8]

Plaintiff filed his second amended complaint on June 14, 2017.[9]  In the second amended complaint, Plaintiff alleges that between February and September of 2015, Defendant Jones subjected Plaintiff to sexual harassment and terroristic threats.[10]  Plaintiff alleges that Jones threatened to rape and murder Plaintiff and

---

[3]   Doc. 26.
[4]   *Id.*
[5]   Docs. 33, 38, 40.
[6]   Doc. 51.
[7]   *Id.*
[8]   *Id.* at 5.
[9]   Doc. 52.
[10]  *Id.* at 2.

his family, denied him meals, hit his cell door with a "metal pike," destroyed Plaintiff's mail, deprived him of cleaning supplies, and took away his paperwork and clothing.[11]  Plaintiff also alleges that Jones frequently exposed his penis to Plaintiff and gave Plaintiff pornography.[12]

   Plaintiff alleges that Defendant Dempsey denied Plaintiff meals, tampered with his food, denied him clothing, cleaning supplies, and paperwork, and interfered with his mail.[13]  Plaintiff alleges that Dempsey took these actions in retaliation for Plaintiff filing grievances against Defendant Jones.[14]  Plaintiff alleges that Defendant Youch distributed pornography to Plaintiff, sexually and verbally harassed him, and threatened him.[15]  Plaintiff also alleges that Youch regularly denied him meals and took away his clothing, cleaning supplies, and paperwork.[16]  Plaintiff alleges that Defendant Brown denied Plaintiff meals, tampered with his food, and denied him clothing, cleaning supplies, and paperwork.[17]  Both Youch and Brown were allegedly acting in retaliation for Plaintiff filing PREA complaints of sexual harassment.[18]  Plaintiff asserts that Defendants Jones, Dempsey, Youch, and Brown violated his rights under the First,

---

[11]  *Id.* at 2-3.
[12]  *Id.* at 3.
[13]  *Id.*
[14]  *Id.*
[15]  *Id.*
[16]  *Id.*
[17]  *Id.*
[18]  *Id.*

Eighth, and Fourteenth Amendments and requests compensatory and punitive damages.[19] He also seeks injunctive relief requiring Defendants to "put cameras in blind spots" in SCI-Camp Hill and "stop torture cell use."[20] In addition to the claims against Jones, Dempsey, Youch, and Brown, Plaintiff also names as Defendants supervisory officials Harry, Francis, Horner, Wetzel, and Smeal.[21]

Defendants answered the second amended complaint on September 7, 2018.[22] Following the Defendants' answer, discovery in the case continued for over two years, and the Court resolved eight motions for preliminary injunctions filed by Plaintiff as well as numerous motions to compel discovery and other miscellaneous motions. Following the close of discovery, Defendants moved for summary judgment on May 19, 2021.[23]

I granted the motion for summary judgment in part and denied it in part on December 15, 2021.[24] I found that there was a material fact as to whether Plaintiff exhausted administrative remedies with respect to his remaining claims.[25] I further found that contrary to Plaintiff's argument, Jones, Dempsey, Youch, and Brown were the only remaining Defendants because Plaintiff did not have leave of the

---

[19] *Id.*
[20] *Id.*
[21] *See id.* at 4.
[22] Doc. 63.
[23] Doc. 168.
[24] Docs. 200-01.
[25] Doc. 200 at 11-12.

Court to include the other Defendants in his operative complaint.[26] I granted summary judgment to the remaining Defendants to the extent the second amended complaint raised official capacity claims and as to (1) Plaintiff's Eighth Amendment claims arising from verbal threats and harassment; (2) Plaintiff's claims under the Americans with Disabilities Act ("ADA"); and (3) Plaintiff's Fourteenth Amendment claims.[27]

I denied summary judgment to the extent the second amended complaint asserted claims for denial of meals in violation of the Eighth Amendment and retaliation in violation of the First Amendment.[28] I referred those claims to mediation and stated that if mediation was unsuccessful I would decide the issue of administrative exhaustion in my role as a fact finder.[29]

The court-appointed mediator reported on June 9, 2022 that mediation was unsuccessful.[30] I accordingly issued an Order on June 28, 2022 scheduling the case for an evidentiary hearing on the issue of exhaustion and directing the parties to submit evidence relevant to that issue prior to the hearing.[31] I conducted the

---

[26] *Id.* at 12-13.
[27] *Id.* at 13-14, 16-17.
[28] *Id.* at 14-16.
[29] Doc. 201 at 2-3.
[30] Doc. 214.
[31] Doc. 215.

hearing as scheduled on August 23, 2022.[32] The parties subsequently filed supplemental briefs on the issue of exhaustion.[33] The issue is now ripe for review.

## II. AUGUST 23, 2022 EVIDENTIARY HEARING AND EXHIBITS

During the August 23, 2022 evidentiary hearing, the Court heard testimony from two witnesses, Deborah Alvord, a Superintendent's Assistant at SCI-Camp Hill, and David Radziewicz, the Prison Rape Elimination Act ("PREA") Coordinator for the Pennsylvania Department of Corrections ("DOC").[34] Alvord testified as to the substance of all grievances Plaintiff filed pursuant to DC-ADM 804, the DOC's general grievance policy, during the period of time relevant to this case and identified whether each grievance asserted claims for denial of food or retaliation against any of the remaining Defendants.[35] At the conclusion of Alvord's testimony the parties stipulated on the record that Plaintiff's remaining claims arose exclusively from grievances and complaints that he lodged pursuant to the DOC's PREA policy, DC-ADM 008, during the calendar year 2015.[36]

Radziewicz testified as to the procedures for raising PREA complaints pursuant to DC-ADM 008 and as to the substance of the PREA complaints Plaintiff raised in 2015.[37] According to Radziewicz, Plaintiff made two complaints

---

[32] Doc. 233.
[33] Docs. 237, 248-49.
[34] Transcript of Evidentiary Hearing at 6, 148. All citations to the transcript are based on the copy of the transcript provided to the Court by the assigned Court Reporter.
[35] *See id.* at 9-93.
[36] *Id.* at 146-47.
[37] *Id.* at 149-211.

under PREA in August 2015, which were the only PREA complaints he made in the calendar year 2015.[38]

Plaintiff initiated the first PREA complaint, which Defendants labeled Exhibit 10 during the evidentiary hearing, by making a verbal complaint of sexual harassment by Defendant Jones to Captain Marci Baskeyfield on August 3, 2015.[39] Plaintiff also stated to Baskeyfield that unnamed officers were refusing to pick up his mail or his sick line request slips.[40]

Plaintiff was interviewed about the allegations pursuant to the prison's PREA investigation on August 17, 2015.[41] During the interview, Plaintiff stated that Jones threatened him and his family with physical violence on July 27, 2015, told Plaintiff that he was going to "fuck him in his ass" and that he wanted Plaintiff to "suck his dick."[42] Jones also purportedly threatened to pull his penis out of his pants and urinate on Plaintiff's personal property.[43] Plaintiff further stated during the interview that Defendants Dempsey and Brown had been denying him food and that Youch had verbally sexually harassed him.[44]

---

[38] *Id.* at 153.
[39] *See* Doc. 219-10 at 11.
[40] *Id.*
[41] *Id.* at 3.
[42] *Id.* at 4.
[43] *Id.*
[44] *Id.*

Plaintiff additionally provided a written statement about Jones's actions on August 17, 2015.[45] In the written statement, Plaintiff represented that Jones threatened to "fuck [Plaintiff] in the ass"; told Plaintiff to "suck his dick"; threatened to rape Plaintiff and his sister; threatened to kill Plaintiff and his family; threatened to pull out his penis and urinate on Plaintiff's property; banged a metal pike on the door of Plaintiff's cell; shook, rattled, and banged on the door; denied Plaintiff the opportunity to shave; destroyed Plaintiff's nail clippers and razor; denied Plaintiff "administrative paperwork"; tore up Plaintiff's administrative paperwork, legal paperwork, and mail; refused to send Plaintiff's mail; refused to give Plaintiff laundry exchange; asked other inmates if they wanted Plaintiff's newspaper; and read Plaintiff's mail aloud to the rest of Plaintiff's housing block before destroying it.[46] Plaintiff alleged that Youch, Dempsey, and Brown were "involved with CO Jones in this" and alleged that Youch had denied him food, tampered with his food, and made sexual comments in retaliation for Plaintiff filing PREA complaints.[47]

Plaintiff initiated the second PREA complaint, which was labeled as Defendants' Exhibit 11 during the evidentiary hearing, by filing a grievance pursuant to DC-ADM 804 on August 10, 2015.[48] In the grievance, Plaintiff alleged

---

[45] *Id.* at 15-16.
[46] *Id.*
[47] *Id.* at 16.
[48] *See* Doc. 219-11 at 3.

that Jones had verbally and sexually harassed him on several occasions and that he had exposed his penis to Plaintiff on one occasion.[49] Plaintiff was interviewed on September 8, 2015 as part of the resulting PREA investigation.[50] Plaintiff alleged during the interview that Jones regularly said "suck my dick" and "I'm going to rape you and your sister" to Plaintiff.[51] Plaintiff alleged that on multiple occasions, he had observed Jones loosen his pants, pull out his penis, and "hump" mail belonging to Plaintiff and other inmates.[52] Plaintiff further alleged that Jones had urinated on Plaintiff's personal property.[53]

## III. STANDARD OF REVIEW

Under the Prison Litigation Reform Act ("PLRA"), prisoner plaintiffs must exhaust all available administrative remedies before they may challenge the conditions of their confinement in federal court.[54] The statute requires "proper exhaustion," meaning the prisoner must complete the administrative review process in accordance with the procedural rules set by the prison.[55]

## IV. ANALYSIS

In this case, the parties have stipulated that the only documents relevant to the exhaustion analysis are Plaintiff's 2015 PREA complaints and the

---

[49] *Id.*
[50] *Id.* at 4.
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] 42 U.S.C. § 1997e(a); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 304 (3d Cir. 2020).
[55] *Id.* at 305 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

investigations that resulted therefrom.  Accordingly, I will confine my analysis to the procedures that the DOC provides for exhausting administrative remedies with respect to a PREA claim, which are laid out in DC-ADM 008.

Under the version of DC-ADM 008 that was in effect at the time of the facts of this case,[56] inmates could report sexual abuse, sexual harassment, or retaliation for reporting sexual abuse or harassment through a verbal report to a staff member, a written inmate request to a staff member, or a sexual abuse reporting phone line.[57]  The policy stated that inmates were not to report sexual abuse through a grievance filed pursuant to DC-ADM 804 and that if an inmate filed a grievance "related to sexual abuse," the grievance officer receiving the grievance "shall immediately forward this grievance to the Security Officer for investigation.  The inmate will be notified of this action.  This will be considered an exhaustion of administrative remedies."[58]  The policy did not require inmates to pursue any appeals to exhaust administrative remedies.[59]

Based on the testimony during the August 23, 2022 evidentiary hearing, the parties' exhibits, the parties' supplemental briefing, and the parties' stipulation as to the exhaustion analysis being limited to Plaintiff's PREA complaints, I find that

---

[56] DC-ADM 008 has been amended multiple times since the facts that give rise to this case occurred, most recently on January 30, 2023.  The version of DC-ADM 008 that was in effect at the time of this case was issued on June 5, 2014, with an effective date of June 30, 2014, and is cited on the electronic docket of this case as Doc. 219-2.
[57] Doc. 19-2 at 43-44.
[58] *Id.*
[59] *See generally* Doc. 19-2.

11

Plaintiff has failed to exhaust administrative remedies with respect to his denial of meals and retaliation claims. Prior to filing his complaint in this Court on August 11, 2015, Plaintiff had only asserted PREA complaints for (1) verbal and sexual harassment by Defendant Jones; (2) unnamed correctional officers refusing to pick up his mail or his sick line request slips; and (3) Jones exposing his penis to Plaintiff on one occasion.[60] No complaints of the denial of meals or retaliation had been made in either one of the PREA complaints or resulting investigations prior to August 11, 2015.

Exhaustion of administrative remedies must be completed *before* a plaintiff files suit; the plaintiff may not complete exhaustion after he has already filed suit.[61] Any complaints lodged, or grievances filed, after August 11, 2015 are therefore immaterial to whether Plaintiff exhausted administrative remedies, and the record shows that Plaintiff did not complain of any denial of meals or retaliation prior to that date.[62] Thus, I conclude that Plaintiff failed to exhaust administrative remedies with respect to his denial of meals and retaliation claims.

---

[60] *See* Doc. 219-10 at 11; 219-11 at 3.
[61] *E.g.*, *Pelino v. Sec'y Pa. of Dep't of Corrs.*, 791 F. App'x 371, 373 (3d Cir. 2020); *Wallace v. Miller*, 544 F. App'x 40, 42 (3d Cir. 2013); *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n.9 (3d Cir. 2002); *Miller v. Little*, No. 3:21-CV-1941, 2023 WL 2529553, at *3 (M.D. Pa. Mar. 15, 2023).
[62] Although exhaustion that occurred after the filing of the initial complaint could be relevant if Plaintiff had filed supplemental claims arising from facts that occurred after the filing of the initial complaint, Plaintiff has not been granted leave to supplement his complaint to add such claims. *See* Doc. 51 at 5 (granting leave to amend limited to "claims which were originally raised"); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (explaining that under Federal Rule of Civil Procedure 15, an amended complaint "set[s] forth additional events

Plaintiff cites several exhibits that have been filed in this litigation that purportedly establish exhaustion of administrative remedies.[63] After carefully reviewing these documents,[64] I find that none of them establish that he exhausted administrative remedies prior to August 11, 2015 with respect to his denial of meals or retaliation claims.[65] Accordingly, they do not alter my conclusion that Plaintiff has failed to exhaust administrative remedies.

Plaintiff raises several arguments in opposition to this conclusion. Plaintiff first argues that his claims cannot be dismissed for failure to exhaust administrative remedies because DC-ADM 008 does not state that complaints made pursuant to that policy may be procedurally defaulted.[66] This argument is without merit. Exhaustion of administrative remedies is required for any claims in which a prisoner challenges the conditions of his confinement.[67] The fact that a plaintiff has raised his administrative complaint pursuant to DC-ADM 008 rather than DC-

---

that occurred before the original complaint was filed," whereas a supplemental complaint "presents more recent events"). Thus, because the scope of this case is limited to factual events that occurred before the filing of the original complaint, the Court's exhaustion analysis must be similarly limited in scope.

[63] Doc. 248 at 3-6.
[64] Many of these exhibits were not presented or admitted into the record during the August 23, 2022 evidentiary hearing, but I have reviewed them in light of Plaintiff's status as a *pro se* litigant.
[65] *See* Doc. 8; Doc. 131-2 at 57, 69, 82; Doc. 219-2 at 43-44; Doc. 219-8 at 17-18; Doc. 219-9 at 3-4; Doc. 219-12 at 2.
[66] Doc. 248 at 9.
[67] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

ADM 804 does not excuse him from the obligation to exhaust administrative remedies.[68]

Plaintiff next argues that the prison's grievance system was rendered unavailable to him because prison staff members gave him inconsistent instructions as to whether his complaints needed to be raised under DC-ADM 008 or DC-ADM 804.[69] Plaintiff bases this argument on his Exhibit C, a June 20, 2016 final appeal dismissal from the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") in which Chief Grievance Officer Dorina Varner noted that PREA retaliation claims should be raised pursuant to DC-ADM 008 rather than DC-ADM 804;[70] and his Exhibit D, a September 15, 2015 investigative summary connected to one of Plaintiff's PREA investigations in which Security Lieutenant Joe Francis notes that he interviewed Plaintiff on August 17, 2015 and informed him that claims that staff were tampering with his food and mail would need to be filed as separate grievances pursuant to DC-ADM 804.[71]

---

[68] *See, e.g.*, *Ricciardi v. Shumencky*, No. 1:17-CV-719, 2018 WL 1251834, at *5-6 (M.D. Pa. Mar. 12, 2018) (granting summary judgment to defendants for plaintiff's failure to exhaust administrative remedies under DC-ADM 008).

[69] Doc. 248 at 10.

[70] *See* Doc. 248-1 at 30. Plaintiff does not provide the first page of this investigative summary with his exhibits, but the exhibit has also been provided in complete form by Defendants. *See* Doc. 219-10 at 3-5. I have cross-referenced Plaintiff's Exhibit D with Defendants' exhibits to confirm the fact that Francis authored the investigative summary, the date of the investigative summary, and the date on which Francis interviewed Plaintiff and provided the information that forms the basis of Plaintiff's unavailability argument. *See id.*

[71] *See* Doc. 248-1 at 31-32.

14

Prison grievance processes "are unavailable—and thus may be deemed exhausted—in three circumstances: (1) when the remedy 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use'; and (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"[72]  Although the initial burden to prove failure to exhaust administrative remedies lies with the defendants, it is the plaintiff's burden to prove that administrative remedies were unavailable to him.[73]

Misleading instructions as to how to complete a prison's grievance process may render the process unavailable, even when the instructions are not intentionally misleading.[74]  To show that the grievance system was rendered unavailable based on misleading instructions, the plaintiff must establish "(1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation."[75]  Evidence of objectively misleading instructions being given

---

[72] *Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)).
[73] *Id.* at 587 (citing *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018)).
[74] *Id.* at 585.
[75] *Id.* at 588.

15

to the plaintiff may be circumstantial evidence that the plaintiff was subjectively misled, "but a further showing" of being subjectively misled, such as "documents, affidavits, or live testimony if deemed warranted," is typically required.[76] Defendants may overcome circumstantial evidence that the plaintiff was subjectively misled with evidence "that an inmate actually knew how to navigate the grievance process despite the misleading instructions."[77]

    I find that Plaintiff has not met his burden to show that the prison's grievance process was unavailable.  Plaintiff's Exhibits C and D do not show that Plaintiff was provided objectively misleading information prior to his attempts to exhaust administrative remedies.  For one, the exhibits indicate that the purportedly misleading information was provided to Plaintiff *after* had had filed this lawsuit.[78] Moreover, based on the version of DC-ADM 008 that was in effect at the relevant time and Radziewicz's testimony about that policy, the information provided to Plaintiff also appears to accurately reflect what complaints could be grieved through DC-ADM 008.[79]  I have also reviewed all of the other exhibits Plaintiff

---

[76] *Id.* (citing *Rinaldi*, 904 F.3d at 269).
[77] *Id.*
[78] *See* Doc. 248-1 at 30 (noting that information was provided to Plaintiff on June 20, 2016); *see* Docs. 248-1 at 31-32 and Doc. 219-10 at 3-5 (noting that information was provided to Plaintiff on August 17, 2015).
[79] *See* Doc. 219-2 at 44 (noting that DC-ADM 008 may be used to report "sexual abuse, sexual harassment or retaliation by other inmates or staff for reporting sexual abuse and sexual harassment" and that grievances pursuant to DC-ADM 804 should not be used to report "grievance[s] related to sexual abuse"); Transcript of Evidentiary Hearing at 249-51 (noting that DC-ADM 008 could be used to report sexual abuse, sexual harassment, and retaliation that was directly connected to reports of sexual abuse and sexual harassment pursuant to DC-ADM

produced in advance of the evidentiary hearing or as attachments to his supplemental brief,[80] and I find that none of them show that Plaintiff was provided objectively misleading instructions by prison staff.

Furthermore, even assuming, *arguendo*, that Plaintiff was provided objectively misleading instructions, Plaintiff has not provided any evidence to support a "further showing" that he was subjectively misled by the instructions.[81] Plaintiff did not, for example, testify as to how any instructions by prison staff subjectively misled him, nor did he provide any exhibits tending to prove that fact. Plaintiff's Exhibits C and D cannot support a finding that Plaintiff was subjectively misled because, as noted above, they indicate that the relevant information was given to him by prison staff after he had already filed this lawsuit. I find Plaintiff's failure to provide evidence that he was subjectively misled fatal to his unavailability argument.[82]

---

 008, but that DC-ADM 008 could not be used to report generalized complaints of conditions of confinement, including claims of denial of food).
[80] *See* Docs. 231-1, 248-1.
[81] *See Hardy*, 959 F.3d at 588.
[82] I note that Plaintiff has vaguely gestured at two other unavailability arguments during the evidentiary hearing and his supplemental briefing—one arising from Defendants purportedly interfering with his ability to submit grievances and the other arising from prison officials purportedly removing a telephone hotline that was supposed to be available to report sexual abuse and sexual harassment pursuant to DC-ADM 008. Plaintiff has not succinctly stated what these arguments are, much less developed or supported them. Accordingly, I will disregard the arguments because it is Plaintiff's burden to establish that administrative remedies were unavailable, *see Hardy*, 959 F.3d at 587, and Plaintiff has clearly failed to meet that burden with respect to these arguments.

Plaintiff additionally argues that several claims he purportedly raised in the second amended complaint have been ignored by the Court and by Defendants' briefs and that the claims remain viable.  Specifically, Plaintiff asserts that he raised (1) a claim that he was subjected to prison disciplinary proceedings in retaliation for his protected conduct; (2) a claim based on Defendant Jones allegedly exposing his penis to Plaintiff; and (3) a claim based on Defendants allegedly giving Plaintiff pornography.[83]

I disagree with Plaintiff that any of these claims remain viable.  First, I do not construe the second amended complaint to raise a claim based on a retaliatory disciplinary proceeding.  The only mention of a prison disciplinary proceeding in the second amended complaint is that Plaintiff was "subject[ed]" to a "disciplinary report."[84]  There are no allegations about this "disciplinary report," such as what misconduct charge gave rise to it, which defendants were responsible for the charge, what proceedings occurred as a result of the charge, or what disciplinary sentence, if any, Plaintiff received.  Plaintiff's conclusory and completely unsupported reference to a "disciplinary report" is not sufficient to assert a claim, let alone a claim that would satisfy the pleading requirements of Federal Rule of Civil Procedure 8.

---

[83]   Doc. 248 at 12.
[84]   *See* Doc. 52 at 2.

Similarly, I do not construe the second amended complaint to raise any claim based on Defendants giving Plaintiff pornography. Although the second amended complaint clearly alleges that Defendants gave Plaintiff pornography,[85] there is no allegation that this action was unwelcome by Plaintiff or that Plaintiff suffered any harm as a result of Defendants giving him pornography.

Finally, although the second amended complaint could be liberally construed to assert a claim against Defendant Jones based on Jones allegedly exposing his penis to Plaintiff,[86] this claim was not properly raised in the second amended complaint. In my Order granting Plaintiff leave to file a second amended complaint, I stated that the complaint must be "limited to those defendants and claims which were originally raised and not previously dismissed."[87] Plaintiff did not allege anywhere in his original complaint or his first amended complaint that Jones ever exposed his penis to Plaintiff, nor did he allege facts from which such a claim could be inferred. Accordingly, any claim in the second amended complaint relating to allegations that Jones exposed his penis to Plaintiff was not properly raised and therefore is not a viable claim in this litigation.

---

[85] *See id.* at 3.
[86] *See id.* (alleging that Jones "would expose [his] penis" to Plaintiff).
[87] Doc. 51 at 5.

## V. CONCLUSION

For the foregoing reasons, I find that Plaintiff has failed to exhaust administrative remedies as to his remaining claims and I will dismiss the claims on that basis.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
