IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALFONSO PERCY PEW, | No. 3:15-CV-01611 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| COL. E.A. JONES, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

MAY 12, 2023

*Pro se* Plaintiff Alfonso Percy Pew ("Plaintiff"), who is presently incarcerated in the State Correctional Institution-Phoenix ("SCI-Phoenix"), complains that various officials violated his civil rights when he was formerly incarcerated in the State Correctional Institution-Camp Hill ("SCI-Camp Hill"). Following the dismissal of several claims and Defendants, I granted summary judgment as to all claims and Defendants other than Plaintiff's First Amendment retaliation and Eighth Amendment denial of food claims against Defendants Jones, Dempsey, Youch, and Brown on December 15, 2021, and announced my intention to decide whether Plaintiff exhausted administrative remedies as to the remaining claims. I subsequently conducted an evidentiary hearing on the exhaustion issue and ordered supplemental briefing. Following the evidentiary hearing and supplemental briefing, I concluded that Plaintiff failed to exhaust administrative

remedies with respect to the remaining claims and dismissed the claims on that basis. Plaintiff has now moved to vacate that judgment. I will deny the motion to vacate.

I.   **BACKGROUND**

Plaintiff initiated this case through the filing of a complaint under 42 U.S.C. § 1983 on August 11, 2015, which the Court received and docketed on August 18, 2015.[1] In the original complaint, Plaintiff alleged that he was being denied meals, threatened, and otherwise retaliated against by prison officials to prevent him from reporting sexual harassment and abuse under the Prison Rape Elimination Act ("PREA").[2] The case was initially assigned to my late colleague United States District Judge Edwin M. Kosik and referred to United States Magistrate Judge Martin C. Carlson. By Order dated June 9, 2016, Judge Kosik addressed multiple reports and recommendations by Magistrate Judge Carlson and dismissed several of Plaintiff's claims.[3] Plaintiff was granted leave to amend.[4] Plaintiff subsequently amended his complaint, moved for leave to add seven defendants to the case, and moved for leave to file a supplemental complaint.[5] Judge Kosik assumed inactive status on February 10, 2017, and the case was reassigned to me on February 21, 2017.

---

[1]   *See* Doc. 1 at 5.
[2]   Doc. 1.
[3]   Doc. 26.
[4]   *Id.*
[5]   Docs. 33, 38, 40.

I reviewed Plaintiff's amended complaint and the associated motions on May 30, 2017.[6] I concluded that the complaint did not comply with the pleading requirements of Federal Rule of Civil Procedure 8.[7] I accordingly granted Plaintiff a final opportunity to file an amended complaint that complied with Rule 8, but cautioned that the complaint must be "limited to those defendants and claims which were originally raised and not previously dismissed."[8]

Plaintiff filed his second amended complaint on June 14, 2017.[9] In the second amended complaint, Plaintiff alleges that between February and September of 2015, Defendant Jones subjected Plaintiff to sexual harassment and terroristic threats.[10] Plaintiff alleges that Jones threatened to rape and murder Plaintiff and his family, denied him meals, hit his cell door with a "metal pike," destroyed Plaintiff's mail, deprived him of cleaning supplies, and took away his paperwork and clothing.[11] Plaintiff also alleges that Jones frequently exposed his penis to Plaintiff and gave Plaintiff pornography.[12]

Plaintiff alleges that Defendant Dempsey denied Plaintiff meals, tampered with his food, denied him clothing, cleaning supplies, and paperwork, and

---

[6] Doc. 51.
[7] Id.
[8] Id. at 5.
[9] Doc. 52.
[10] Id. at 2.
[11] Id. at 2-3.
[12] Id. at 3.

interfered with his mail.[13]  Plaintiff alleges that Dempsey took these actions in retaliation for Plaintiff filing grievances against Defendant Jones.[14]  Plaintiff alleges that Defendant Youch distributed pornography to Plaintiff, sexually and verbally harassed him, and threatened him.[15]  Plaintiff also alleges that Youch regularly denied him meals and took away his clothing, cleaning supplies, and paperwork.[16]  Plaintiff alleges that Defendant Brown denied Plaintiff meals, tampered with his food, and denied him clothing, cleaning supplies, and paperwork.[17]  Both Youch and Brown were allegedly acting in retaliation for Plaintiff filing PREA complaints of sexual harassment.[18]  Plaintiff asserts that Defendants Jones, Dempsey, Youch, and Brown violated his rights under the First, Eighth, and Fourteenth Amendments and requests compensatory and punitive damages.[19]  He also seeks injunctive relief requiring Defendants to "put cameras in blind spots" in SCI-Camp Hill and "stop torture cell use."[20]  In addition to the claims against Jones, Dempsey, Youch, and Brown, Plaintiff also names as Defendants supervisory officials Harry, Francis, Horner, Wetzel, and Smeal.[21]

---

[13]  *Id.*
[14]  *Id.*
[15]  *Id.*
[16]  *Id.*
[17]  *Id.*
[18]  *Id.*
[19]  *Id.*
[20]  *Id.*
[21]  *See id.* at 4.

4

Defendants answered the second amended complaint on September 7, 2018.[22] Following the Defendants' answer, discovery in the case continued for over two years, and the Court resolved eight motions for preliminary injunctions filed by Plaintiff as well as numerous motions to compel discovery and other miscellaneous motions. Following the close of discovery, Defendants moved for summary judgment on May 19, 2021.[23]

I granted the motion for summary judgment in part and denied it in part on December 15, 2021.[24] I found that there was an issue of material fact as to whether Plaintiff exhausted administrative remedies with respect to his remaining claims.[25] I further found that contrary to Plaintiff's argument, Jones, Dempsey, Youch, and Brown were the only remaining Defendants because Plaintiff did not have leave of the Court to include the other Defendants in his operative complaint.[26]

I granted summary judgment to the remaining Defendants to the extent the second amended complaint raised official capacity claims and as to (1) Plaintiff's Eighth Amendment claims arising from verbal threats and harassment; (2) Plaintiff's claims under the Americans with Disabilities Act ("ADA"); and (3) Plaintiff's Fourteenth Amendment claims.[27] I denied summary judgment to the

---

[22] Doc. 63.
[23] Doc. 168.
[24] Docs. 200-01.
[25] Doc. 200 at 11-12.
[26] *Id.* at 12-13.
[27] *Id.* at 13-14, 16-17.

extent the second amended complaint asserted claims for denial of meals in violation of the Eighth Amendment and retaliation in violation of the First Amendment.[28]  I referred those claims to mediation and stated that if mediation was unsuccessful I would decide the issue of administrative exhaustion in my role as a fact finder.[29]

The court-appointed mediator reported on June 9, 2022 that mediation was unsuccessful.[30]  I accordingly issued an Order on June 28, 2022 scheduling the case for an evidentiary hearing on the issue of exhaustion and directing the parties to submit evidence relevant to that issue prior to the hearing.[31]  I conducted the hearing as scheduled on August 23, 2022.[32]  The parties subsequently filed supplemental briefs on the issue of exhaustion.[33]

Upon consideration of the evidentiary hearing and the supplemental briefing, I concluded that Plaintiff failed to exhaust administrative remedies with respect to the remaining claims and dismissed the claims on that basis.[34]  I confined my exhaustion analysis to the complaints Plaintiff raised pursuant to the DOC's PREA policy, DC-ADM 008, based on the parties' stipulation that these complaints were the only complaints relevant to whether Plaintiff exhausted administrative

---

[28] *Id.* at 14-16.
[29] Doc. 201 at 2-3.
[30] Doc. 214.
[31] Doc. 215.
[32] Doc. 233.
[33] Docs. 237, 248-49.
[34] Docs. 251-52.

remedies.³⁵  I also noted that exhaustion of administrative remedies needed to be completed no later than August 11, 2015, the date Plaintiff filed his initial complaint.³⁶  With that in mind, I found that Plaintiff failed to exhaust administrative remedies because the only PREA complaints he had made prior to August 11, 2015 were about verbal and sexual harassment by Defendant Jones, unnamed correctional officers refusing to pick up his mail or sick line request slips, and Jones exposing his penis to Plaintiff on one occasion, with no complaints of retaliation or denial of meals being made before that date.³⁷  I rejected Plaintiff's argument that exhaustion of administrative remedies was not required for PREA complaints and found that Plaintiff had not met his burden to show that the grievance process was unavailable to him.³⁸

I additionally rejected Plaintiff's argument that several claims he purportedly raised in his second amended complaint remained viable because they had been ignored by the Court and Defendants.³⁹  Specifically, Plaintiff asserted that he raised viable claims that he was subjected to prison disciplinary proceedings in retaliation for protected conduct, that Defendant Jones exposed his penis to Plaintiff, and that Defendants allegedly gave Plaintiff pornography.⁴⁰  I concluded

---

³⁵  Doc. 251 at 10-11.
³⁶  *Id.* at 12.
³⁷  *Id.*
³⁸  *Id.* at 13-17.
³⁹  *Id.* at 18-19.
⁴⁰  Doc. 248 at 12.

that none of these claims remained viable because the second amended complaint did not adequately plead his retaliatory discipline or pornography claims and because Plaintiff did not have leave to include the claim related to Jones allegedly exposing his penis to Plaintiff in the second amended complaint.[41]

Accordingly, based on my conclusions that Plaintiff failed to exhaust administrative remedies with respect to the remaining retaliation and denial of meals claims and that no other claims remained viable, I dismissed the remainder of the case for failure to exhaust administrative remedies.[42] Plaintiff appealed to the United States Court of Appeals for the Third Circuit on April 24, 2023,[43] and filed the instant motion to vacate judgment on April 27, 2023.[44] The Third Circuit stayed the appeal pending my resolution of the motion on May 4, 2023.[45] I consider the arguments raised in Plaintiff's motion below.

## II. STANDARD OF REVIEW

To properly support a motion to alter or amend a judgment, often referred to as a motion for reconsideration, a party must demonstrate "at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the

---

[41] Doc. 251 at 18-19.
[42] *Id.* at 20.
[43] Doc. 255.
[44] Doc. 253.
[45] Doc. 257.

need to correct a clear error of law or fact or to prevent manifest injustice."[46]  In reviewing for clear error, reconsideration is warranted only if the "[C]ourt is left with the definite and firm conviction that a mistake has been committed."[47]  Thus, to warrant reconsideration, the moving party "must show more than mere disagreement with the earlier ruling" and must show that the court "committed a direct, obvious, or observable error, and one that is of at least some importance to the larger proceedings."[48]  Motions for reconsideration "cannot be used to reargue issues that the court has already considered and disposed of."[49]  Additionally, a motion for reconsideration "may not be used to present a new legal theory for the first time" or "to raise new arguments that could have been made in support of the original motion."[50]

### III.  ANALYSIS

I will address Plaintiff's arguments for reconsideration *seriatim*.  First, Plaintiff "preserves the objection for appeal" that Harry, Francis, Horner, Wetzel, and Smeal were properly named as Defendants in Plaintiff's second amended complaint because Judge Kosik dismissed the original complaint without

---

[46]  *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017) (cleaned up).
[47]  *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258 (3d Cir. 2008) (internal quotation marks omitted).
[48]  *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir. 2018) (cleaned up).
[49]  *McSparren v. Pennsylvania*, 289 F. Supp. 3d 616, 621 (M.D. Pa. 2018) (citing *Blanchard v. Gallick*, No. 1:09-CV-01875, 2011 WL 1878226 at *1 (M.D. Pa. May 17, 2011)).
[50]  *MMG Ins. Co. v. Guiro, Inc.*, 432 F. Supp. 3d 471, 474 (M.D. PA. 2020) (citing *Vaidya Xerox Corp.*, No. 97-CV-00547, 1997 WL 732464, *2 (E.D. Pa. Nov. 25, 1997)).

prejudice.[51]  I liberally construe this is an argument for reconsideration, but reject the argument.

My May 30, 2017 Order granting Plaintiff leave to file a second amended complaint clarified that the second amended complaint had to be "limited to those defendants and claims which were originally raised and not previously dismissed."[52]  Thus, Plaintiff did not have leave to include the previously dismissed defendants in his second amended complaint.  Earlier orders to the contrary cannot overrule that ruling.

Plaintiff's second argument is that the Court relied solely on the testimony of David Radziewicz to determine that Plaintiff only filed two PREA complaints in 2015, and that Radziewicz's testimony to that effect cannot be accepted as true because Plaintiff submitted as evidence "letters attached as exhibits in Plaintiff['s] brief accounting for months of PREA letters to officials listing retaliations such as food denials."[53]  I reject this argument.

Plaintiff has not attached any of the letters he purportedly filed raising PREA complaints, and to the extent he asserts that I failed to consider the exhibits attached to his brief, the argument is without merit.  I exhaustively reviewed

---

[51]  Doc. 253 at 1.
[52]  Doc. 51 at 5.
[53]  Doc. 253 at 1.

Plaintiff's exhibits and determined that they did not establish that he exhausted administrative remedies.[54]

Plaintiff's third and fourth arguments assert that I disregarded evidence that Plaintiff complained of the denial of food during an interview connected to the PREA investigation on August 17, 2015 and in a written statement that he made on the same date, and that I disregarded a complaint Plaintiff made on September 8, 2015 about Jones exposing his penis to Plaintiff.[55] I did not disregard these complaints, I simply concluded they were immaterial to the exhaustion analysis because they were made after Plaintiff filed suit in this case on August 11, 2015.[56]

Plaintiff's fifth argument is that he was not required to appeal PREA complaints to exhaust administrative remedies and that he should thus be deemed to have exhausted administrative remedies because he complained on August 17, 2015 that Defendants were denying him food. This argument is without merit. Administrative complaints made on August 17, 2015 are immaterial to the question of whether Plaintiff exhausted administrative remedies prior to filing suit on August 11, 2015.[57]

---

[54] *See* Doc. 251 at 13-17.
[55] Doc. 253 at 1-2.
[56] *See* Doc. 251 at 12 ("Exhaustion of administrative remedies must be completed *before* a plaintiff files suit; the plaintiff may not complete exhaustion after he has already filed suit. Any complaints lodged, or grievances filed, after August 11, 2015 are therefore immaterial to whether Plaintiff exhausted administrative remedies. . . .").
[57] *See, e.g., Pelino v. Sec'y Pa. of Dep't of Corrs.*, 791 F. App'x 371, 373 (3d Cir. 2020); *Wallace v. Miller*, 544 F. App'x 40, 42 (3d Cir. 2013); *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n.9 (3d Cir. 2002); *Miller v. Little*, No. 3:21-CV-1941, 2023 WL 2529553, at *3 (M.D. Pa. Mar. 15, 2023).

Plaintiff's sixth argument is that exhaustion that occurred after August 11, 2015 is relevant because the question at issue is whether he exhausted administrative remedies prior to filing the currently operative second amended complaint on June 14, 2017, and not whether he exhausted administrative remedies prior to filing his original complaint on August 11, 2015.[58] This argument is without merit. The relevant question in an exhaustion analysis is whether the plaintiff exhausted administrative remedies prior to filing suit; exhaustion of administrative remedies and subsequent amendment of a complaint cannot cure a plaintiff's failure to exhaust prior to filing the original complaint.[59]

Plaintiff's seventh argument is that he should be deemed to have exhausted administrative remedies because the complaints he made through a PREA interview and written statement on August 17, 2015 should be treated as having been raised before the filing of his complaint.[60]

I liberally construe Plaintiff's seventh argument to raise two separate arguments: (1) that his initial complaint should be treated as filed on August 18, 2015, the date the Clerk of Court received and docketed the complaint, rather than August 11, 2015, the date he submitted the complaint to prison officials for mailing; and (2) that even if August 11, 2015 is the relevant date, his complaints

---

<sup>58</sup> Doc. 253 at 2-3.
<sup>59</sup> *See Ahmed*, 297 F.3d at 209.
<sup>60</sup> Doc. 253 at 3.

made on August 17, 2015 should be deemed filed before August 11, 2015 because they are related to his original PREA complaints that he filed before that date.[61]

Neither argument has merit. First, as I noted in my opinion, complaints filed by incarcerated litigants are deemed filed on the date they are submitted to prison officials for mailing, which in this case was August 11, 2015.[62] Second, the PREA complaints Plaintiff made prior to August 11, 2015 concerned only alleged verbal and sexual harassment by Defendant Jones, unnamed correctional officers refusing to pick up his mail or sick line request slips, and Jones exposing his penis to Plaintiff on one occasion.[63] None of these complaints could fairly be construed to complain of retaliation or the denial of food such that those claims can be considered "related" to the earlier PREA complaints. The fact that Plaintiff complained of retaliation and denial of food in the resulting PREA investigation is not sufficient to consider those claims related to the earlier PREA complaints. Such an argument would essentially nullify the exhaustion requirement: a plaintiff could simply raise and exhaust one PREA complaint, file suit in federal court, and then assert any number of factually unrelated claims during the prison's PREA investigation. I accordingly reject this argument.

Plaintiff's eighth argument is that he exhausted administrative remedies in accordance with the DOC's PREA policy because he raised the claims through the

---

[61] *See id.*
[62] Doc. 251 at 2 n.1.
[63] *Id.* at 12.

PREA investigation as shown through the exhibits he submitted with his supplemental brief.[64]  This argument is duplicative of his other arguments.  My opinion clearly demonstrates that I considered all of Plaintiff's exhibits and determined that they did not establish exhaustion of administrative remedies.[65]

Plaintiff's ninth argument is that I disregarded a June 20, 2016 statement from the DOC's Secretary's Office of Inmate Grievances and Appeals ("SOIGA") that purportedly provided misleading instructions as to what steps a Plaintiff must take to exhaust administrative remedies with respect to a PREA retaliation claim.[66]

I did no such thing.  Plaintiff presented the statement from SOIGA to support the proposition that the prison's grievance process was rendered unavailable by the DOC staff's misleading instructions.[67]  I rejected this argument, noting that Plaintiff could not show that he was subjectively misled by SOIGA's statement given that the statement was made long after his attempt to exhaust administrative remedies.[68]  That fundamental defect in Plaintiff's argument remains and there is accordingly no basis to reconsider my prior ruling.

Plaintiff's tenth, eleventh, and twelfth arguments assert that I erred in concluding that the second amended complaint did not plead viable claims arising from Defendants alleging bringing retaliatory disciplinary proceedings against

---

[64]  Doc. 253 at 3.
[65]  *See* Doc. 251 at 13-17.
[66]  Doc. 253 at 4.
[67]  *See* Doc. 248 at 10; Doc. 248-1 at 30.
[68]  *See* Doc. 251 at 17.

Plaintiff, Defendants allegedly giving Plaintiff pornography, or Defendant Jones allegedly exposing his penis to Plaintiff.[69]  Plaintiff argues that I acted *ultra vires* in reaching this conclusion because the issue before the Court was solely whether he exhausted administrative remedies with respect to his retaliation or denial of food claims.[70]  He asserts that the claims should have been allowed to proceed to trial given that Defendants did not raise any summary judgment arguments with respect to the claims.[71]

These arguments are completely frivolous.  The only reason I addressed whether these claims remained viable in this case is because *Plaintiff* asserted that they remained viable.[72]  Plaintiff cannot now assert that I should not have addressed this argument when he specifically invited me to address the argument in the first instance.  Furthermore, because Plaintiff is proceeding *in forma pauperis*, I have the authority to *sua sponte* dismiss his claims for failure to state a claim upon which relief may be granted "at any time."[73]

Plaintiff's thirteenth and final argument is that I precluded him from presenting exhibits showing that Defendants deprived him of meals for a period of several months.[74]  Plaintiff does not assert that these exhibits establish that he

---

[69] Doc. 253 at 4-5.
[70] *Id.*
[71] *Id.* at 5.
[72] *See* Doc. 248 at 12.
[73] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).
[74] Doc. 253 at 6.

exhausted administrative remedies; rather his argument appears to be that I should vacate my ruling that he did not exhaust administrative remedies because this ruling prevents him from litigating the merits of his claims.  This argument is frivolous.  Dismissal for failure to exhaust administrative remedies by its nature means that the Court will not reach the merits of the case.  I cannot excuse Plaintiff's failure to exhaust administrative remedies based on the relative merits of his claims.[75]

## IV.   CONCLUSION

For the foregoing reasons, I will deny Plaintiff's motion to vacate judgment.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[75]   *See Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (holding that exhaustion of administrative remedies under the PLRA is mandatory in all prisoner civil rights cases).